IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JAMES MARVIN BALES, | ) |
| Plaintiff, | ) NO. 3:07-0495 |
| v. | ) JUDGE HAYNES |
| GEORGE LITTLE, et al., | ) |
| Defendant. | ) |

## MEMORANDUM

Plaintiff, James Marvin Bales, a state inmate at Deberry Special Needs Facility ("DSNF"), filed this action under 42 U.S.C. § 1983 against the Defendants: George Little, Commissioner Tennessee Department of Corrections ("TDOC"); Quentin White, former TDOC Commissioner; Robert Waller, DSNF Warden; Gil Mathis, DSNF Deputy Warden; and David Sehorn; Drs. Ivans, Osegbue, Alexander, Bijaura Ramakrishnaiah and Mohammad Rassekhi, who are health care providers at DSNF. Plaintiff asserts Eighth Amendment claims for the Defendants' alleged deliberate indifference to his serious medical needs and denial of medical care for those needs.

Before the Court are the Defendants' motions to dismiss. (Docket Entry Nos. 31 and 35). contending in sum: (1) that Plaintiff failed to exhaust his administrative remedies against Defendants George Little, Robert Waller, Gil Mathis, David Sehorn and Mohammad Rassekhi on the specific claims against them in this action; (2) that Plaintiff's claims are time barred; (3) that Plaintiff fails to state specific facts as to the involvement of several Defendants; and (4) Plaintiff's allegations fail to describe any deliberate indifference to his medical needs.

### A. Analysis of the Complaint

Plaintiff's allegations involve incidents that almost all of which occurred from 2002 to 2005 at various TDOC institutions. Plaintiff was first assigned to the Brushy Mountain Prison where he received what he describes as satisfactory treatment for his various illnesses including diabetes, vascular disease, and neuropathy (Docket Entry No. 1, Complaint at pp. 9-10). Prior to his incarceration, Plaintiff had had multiple surgeries. Id at Attachment 4. Plaintiff was transferred to DSNF in late 2002, where Dr Ivans changed his several medications for pain to Tylenol III, that Plaintiff contends was ineffective. Id. at pp.10-11.

In December, 2002 plaintiff had an open wound in his grion area. Id at p. 10. Plaintiff alleges that he was seen "intermittently " by doctors in 2003 despite signing up regularly to see a doctor, but in February or March, 2003, Dr. Ivans closed the open flesh area with stitches that the nurses were to treat thereafter with wet and dry packages Id. at p.12. I n February or March, 2003 Ramakrishnaiah whom Plaintiff refers to as "Dr. Rama", tried to remove some skin in the area of the surgery allegedly without pain medication, inside Plaintiff's cell, but a nurse told him to take Plaintiff to the clinic where the skin was removed after a shot of demerol. Id. at pp. 13-14. Plaintiff alleges that he was first aware in February, 2005 that Ramakrishnaiah or Dr. Rama"is not a doctor. Id. at p. 16.

Plaintiff alleges that Dr. Ivans oversaw part of this removal, but "between September and December, 2003", Dr. Ivans removed more tissue that Plaintiff alleges caused gangrene to spread to the ulcer at his rear leg develop causing the amputation of his leg in 2004. Id. at p. 15. Plaintiff alleges, he was told the medical team at DSNF had waited too long, and his leg could not be saved. Id. at p. 16.

Dr Osegbue replaced Dr. Ivans , but did not renew Plaintiff's prior medication protocol.

2

Defendant Seahorn, a physician assistant continued to provide dressing and antibiotics and nurses sprayed a numbing agent on Plaintiff's wounds. Plaintiff alleges that by August 2006 that he had gangrene, but does not attribute that condition to any person. Id. at ¶ 36.

Plaintiff filed a series of grievances about his medical treatment with the first asserting that Dr. Ivans -"let my leg go to gangrene." (Docket Entry No. 1-4 at p. 4). Plaintiff's second grievance names only "Dr. Rama" and alleges that the health care provider "cut on my gangrene leg." Id. at p. 8. The third grievance is that Plaintiff alleges that "all Defendants" acted with deliberate indifference, but does not name Defendants Little, Waller, Mathis, Sehorn or Rassekhi, or state specifically what any of them allegedly did. (Docket Entry No. 1-4 at pp. 11 and 12).

This action was filed on May 4, 2007. (Docket Entry No. 1, Complaint). Plaintiff filed his an earlier action based on the same allegations,, that was dismissed on September 30, 2005 without prejudice for Plaintiff's failure to exhaust his administrative remedies. Bales v. TDOC et al, No. 3:05-0781 (Echols, J). Plaintiff then filed this second action almost 20 months after dismissal of the first complaint.

## B. Conclusions of Law

On April 26, 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"). The Act provides at 42 U.S.C. § 1997e(a);

> No action shall be brought with respect to prison conditions under section 1993 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The PLRA requires a prisoner to exhaust his administrative remedies before filing a federal lawsuit. Porter v. Nussle, 534 U.S. 516, 532 (2002) In Porter, the Supreme Court held

3

that the PLRA exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences and that exhaustion pursuant to 42 U.S.C. § 1997e(a) is mandatory.

As to the timeliness of Plaintiff's § 1983 claims, Tenn. Code Ann. § 28-3-104(a)(3) provides a one-year statute of limitations for civil rights actions that controls where a federal statute, as here, does not have a federal statute of limitations. Board of Regents v. Tomanio, 446 U.S. 478, 483-84 (1980). Accordingly, the plaintiff had one year after his claims accrued in which to bring this action against the defendants. See Berndt v. State of Tennessee, 796 F.2d 879 (6th Cir. 1986). Here, the critical events, changes in medication occurred in 2003 and the surgery for gangrene occurred in " first few months of 2004" (Docket Entry No. 1, Complaint at p. 16). Plaintiff signed his first complaint on July 27, 2005 that was filed on September 30, 2005. Bales v. TDOC et al, 3:05cv781, Docket entry No. 1. That action was untimely.

Plaintiff's first action was dismissed without prejudice for his failure to exhaust his administrative remedies on September 30, 2005. Id. at Docket Entry Nos. 3 and 4. Tennessee's "savings statute" requires a second action to be refiled within one year of a dismissal without prejudice. Tenn. Code Ann. § 28-1-105. Plaintiff's second complaint was signed on March 4, 2007 and filed May 4, 2007, both more than a year after dismissal of his first complaint, thus, the Court concludes that with one exception, Plaintiff's claims are barred by the application statute of limitations.

As to Plaintiff's brief one sentence reference to his gangrene condition in August, 2006, (Docket Entry No. 1, Complaint at p. 16, ¶ 36), to state a § 1983 claim against a supervisor, Plaintiff must allege that a defendant was personally involved in some manner in the alleged unconstitutional conduct. Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Conclusory

4

allegations cannot impose supervisory liability on Defendants Little, White, Waller, Alexander or Mathis. Taylor v. Michigan Dep't of Corrections, 69 F.3d 76, 80-81 (6th Cir. 1995). Absent a factual showing that theses Defendants authorized, approved, or knowingly acquiesced in the alleged unconstitutional conduct, the Plaintiff has failed to state a § 1983 claim against Defendants Little, White, Waller, Alexander and Mathis.

As to Plaintiff's medical care claim against his health care providers, the Eighth Amendment requires prison officials to provide medical care for incarcerated persons. Estelle v. Gamble, 429 U.S. 97 (1976). For a prisoner to recover for a violation of that right, the Plaintiff must allege facts that prison authorities act with "deliberate indifference to [the] serious medical needs" of a prisoner. Id. at 104-05.

The Supreme Court articulated the standard for a violation of a prisoner's right to medical care under the Eighth Amendment as follows:

> Deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain proscribed by Eighth Amendment whether the indifference is manifested by prison doctors in response to prison needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed; regardless of how evidenced deliberate indifference to prisoner's serious illness or injuries states cause of action under § 1983.

Estelle, 429 at 104-05. To be sure, actionable the Defendants' conduct or omissions must be "repugnant to the conscience of mankind." Id. at 105.

Here, Plaintiff clearly has serious medical conditions. Plaintiff's health care providers were clearly aware of these conditions and the substantial risk of serious harm, if care were not provided. Brooks v. Celeste, 39 F.3d 125, 128 (6th Cir. 1994). Yet, negligence or gross negligence will not state a claim under § 1983. Estelle, 429 U.S. at 105-06. Federal courts cannot

second guess a medical provider's choice of medical treatment. Westlake v. Lucas, 537 F.2d at 860, n.4 (6th Cir. 1976). For his only timely claim Plaintiff's allegations do not identify the attending doctors and/or nurses who are allegedly responsible for him during this period. Given his multiple medical conditions that includes a history of open sores prior to and throughout his incarceration, the mere allegation of gangrene in these circumstances are insufficient to state a claim against the Defendants who are health care providers. The Sixth Circuit requires a plaintiff to identify the right violated and the defendant's alleged role in that offensive conduct or omission. Dunn v. State of Tennessee, 697 F.2d 121, 128 (6th Cir. 1983). As to his challenge to his change of his medications, that dispute reflects different opinions of his Doctors on the appropriate medications to treat his pain. Plaintiff was provided surgical procedures and received a series of treatment by different nurses.

In these circumstances and without more specificity of the circumstances of his August, 2206 gangrene, the Court cannot discern a viable claim against the defendants who are health care providers for Plaintiff's medical condition in August, 2006.

Accordingly, the Defendants' motion to dismiss this action should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the 28th day of August, 2008.

WILLIAM J. HAYNES JR.
United States District Judge